[952 NYS2d 533]

U.S. Bank National Association, Respondent, v APP International Finance Company, B.V., et al., Appellants.

First Department, October 16, 2012

**APPEARANCES OF COUNSEL**

*Schnader Harrison Segal & Lewis LLP*, New York City (*Benjamin P. Deutsch, Kenneth R. Puhala* and *Alizah Z. Diamond* of counsel), for appellants.

*Seward & Kissel LLP*, New York City (*Dale C. Christensen, Jr.* and *John J. Galban* of counsel), and *Wilk Auslander LLP*, New York City (*Jay S. Auslander, Jessica Taran* and *Adam [Aari] Itzkowitz* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

Once more, we are called upon to resolve matters in this case where the plaintiff's attempts to enforce a billion dollar judgment, due under three promissory notes executed by the defendants between 2002 and 2006, have been repeatedly thwarted by the defendants. The defendants' strategy of delay has revolved

around the procurement of various court orders in Indonesia to frustrate the plaintiff and the jurisdiction of the courts in New York.

Initially, the defendants contend that the judgment they seek to vacate, which was awarded to the plaintiff on three of its seven causes of action, should be vacated because the court did not sever the remaining causes of action. The defendants waived that issue when they failed to raise it on appeal from the $851 million judgment six years ago. (29 AD3d 394 [1st Dept 2006], *lv dismissed* 8 NY3d 830 [2007].)

In that case, the record was clear that the defendants were not appealing on the ground that the motion court had somehow failed to sever the Trustee's remaining causes of action for indemnification, and the costs and expenses of collection, including attorneys' fees. Having failed to raise the issue on their appeal from the judgment or on their reargument motion before this Court or on their motion for leave to appeal to the Court of Appeals, the defendants have waived any argument based on severance. (*See Goncalves v Stuyvesant Dev. Assoc.*, 244 AD2d 267, 268 [1st Dept 1997] ["Since third-party plaintiff's challenge to the validity of the summary judgment order . . . could have been raised in its prior appeal of that order, which culminated in this Court's affirmance, the point is waived"]; *Katz v City of New York*, 231 AD2d 448, 448 [1st Dept 1996] [refusing to consider issue on appeal where it "should have been raised on . . . prior appeal of the . . . order in this case, which culminated in this Court's affirmance"].)

Moreover, the defendants once more assert that this Court should resort to the doctrine of comity to forestall progress in the instant case. The defendants now assert that we should accord recognition to a provisional injunction of a court in Indonesia. Specifically, the provisional injunction of the Indonesian court orders the defendants to produce statements and information on their assets to an Indonesian company, Indah Lestari. The injunction prohibits disclosure to any other entity. Thus, the apparent purpose of the Indonesian injunction is to grant Indah Lestari the ability to examine the assets of the Indah Lestari defendants, which it can attach in order to satisfy its Indonesian judgment. Yet, in three years, it is undisputed that Indah Lestari has not attached a single asset in satisfaction of its judgment.

In a prior appeal by the defendants in a related action, we noted the international legal gamesmanship perpetrated by the

defendants, particularly with regard to the defendants' procurement of injunctions in Indonesia. In relevant part, we determined as follows:

> "Even if the defendants were found to be in violation of an Indonesian court order, they clearly are the engine of their own misfortune. After the IAS court granted summary judgment against them, they started a competing lawsuit in Indonesia. While a state (e.g., New York) may not require a person to do an act in another state (e.g., Indonesia) that is prohibited by the law of that state, orders of foreign courts are not entitled to comity if the litigants who procure them have 'deliberately courted legal impediments' to the enforcement of a federal court's orders. (*Motorola Credit Corp. v Uzan*, 388 F3d 39, 60 [2d Cir 2004], *cert denied* 544 US 1044 [2005] [internal quotation marks and citations omitted].)

> "The defendants claim that the IAS court decided that the above standard had not been met. However, that decision was rendered in another context: the IAS court was denying the plaintiffs' motion to enjoin the defendants from prosecuting the Indonesian lawsuit. Even if the IAS court found that the defendants were not acting in bad faith, the ruling is not binding on this Court. We find that the defendants clearly are engaging in conduct evincing bad faith; they challenged a standard and legitimate indenture that is governed by New York law and managed to procure an Indonesian court order declaring the indenture invalid on the ground that it violated Indonesian law." (*Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25, 37 [1st Dept 2007], *lv denied* 10 NY3d 705 [2008].)

The instant appeal presents the same issues regarding the doctrine of comity as were presented in the prior appeal.

Although not required to do so, the New York courts generally will accord recognition to the judgments rendered in a foreign country under the doctrine of comity, which is the equivalent of full faith and credit given by the courts to judgments of sister states. Absent some showing of fraud in the procurement of the foreign country judgment or that recognition of the judgment would do violence to some strong public policy of New York State, a party who properly appeared in the action is

precluded from attacking the validity of the foreign country judgment in a collateral proceeding brought in a New York court. (*Greschler v Greschler*, 51 NY2d 368, 376 [1980].)

Under New York law, judgment creditors are entitled to broad disclosure in aid of judgment enforcement. (*See ICD Group v Israel Foreign Trade Co. [USA]*, 224 AD2d 293 [1st Dept 1996].) Thus, the plaintiff maintains that this Court should not accord comity to a foreign order that would frustrate this State's public policy favoring judgment enforcement.

It is patent that, pursuant to CPLR 5223, " 'all matter relevant to the satisfaction of the judgment' " is discoverable and "the public policy is to put no obstacle in the path" of those seeking to enforce a judgment. (*Siemens & Halske, GmbH. v Gres*, 77 Misc 2d 745, 745 [Sup Ct, NY County 1973], *affd* 43 AD2d 1021 [1st Dept 1974] [internal quotation marks omitted].)

Moreover, "[t]here is no public policy favoring the repeated assertion of unsustainable arguments, a pattern of delaying tactics designed to inflict extensive costs on the adversary, dishonesty or disingenuousness with the court . . . or contempt of court orders." (*1050 Tenants Corp. v Lapidus*, 39 AD3d 379, 384 [1st Dept 2007], *lv denied* 9 NY3d 807 [2007].) In addition, as set out above, we have made clear that comity is not appropriate where litigants have "deliberately courted legal impediments." (*Gryphon*, 41 AD3d at 37 [internal quotation marks omitted].)

The record establishes that the defendants have, once again, sought to engineer such "legal impediments" to disclosure and obedience to New York court orders. By their own admission, the first time the defendants petitioned the Indonesian court for "permission to provide information and statements regarding assets to creditors in the United States" was on October 8, 2008—almost four months after the Indonesian court entered the Indonesian injunction. The defendants failed to inform the Indonesian court of their longstanding obligations through years of litigation in the courts in New York, until after the Indonesian injunction was issued. This, in and of itself, precludes the extension of comity to the Indonesian injunction. (*See Bouas v Sociedad Maritima San Nicholas, S.A.*, 252 F Supp 286, 287 [SD NY 1965], *cert denied* 382 US 1025 [1966] ["Defendants (1) having failed to inform the Greek court of the action here, and (2) having failed to raise the matter of the so-called Greek settlement for almost four years during which they engaged in lengthy pre-trial proceedings with the plaintiff's at-

torneys, are not now in a position to raise a question of comity between two courts neither of which was informed as to what was happening in the other"]; *Matter of Weil*, 202 AD2d 838, 839 [3d Dept 1994] [refusing to extend comity where, among other things, individual failed to inform Israeli court that action related to 1974 will in a New York proceeding seeking probate of same will or of existence of 1986 will].)

Finally, we note that by memorandum and order dated April 17, 2009, the District Court in *Export-Import Bank of U.S. v Asia Pulp & Paper Co., Ltd.* (2009 WL 1055673, 2009 US Dist LEXIS 33096 [SD NY 2009]), chose not to grant comity to the provisional Indonesian injunction, relying on an expert opinion on Indonesian law that "the injunction itself [is] unusual because it appears contrary to the normal practice of simply attaching assets" and noting that "this sort of injunction is susceptible to abuse, as it could be agreed to by [d]efendants and a customer in order to frustrate other litigation." (2009 WL 1055673, *4, 2009 US Dist LEXIS 33096, *14.)

Accordingly, the order of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered March 15, 2011, which, inter alia, denied the defendants' motion to vacate a judgment and to quash the information subpoenas, subpoenas duces tecum and subpoenas ad testificandum served upon them, or stay their enforcement, should be affirmed, with costs.

TOM, J.P., ANDRIAS, ABDUS-SALAAM and ROMÁN, JJ., concur.

Order, Supreme Court, New York County, entered March 15, 2011, affirmed, with costs.